IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **Country Mill Farms**, **LLC** and **Stephen Tennes**, <br><br> Plaintiffs, <br> v. <br><br> **City of East Lansing**, <br><br> Defendant. | Case No. **1:17-cv-00487-PLM-RSK** <br><br> Honorable Paul L. Maloney <br><br> Reply In Support of Plaintiffs' Motion for Preliminary Injunction <br><br> Oral Argument: September 13, 2017 |

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

ARGUMENT ........................................................................................................................... 2

I.        Preliminary Injunction Standard ................................................................................. 2

II.       The City Raises Irrelevant Motion to Dismiss Arguments ........................................ 2

III.     A Preliminary Injunction Should Issue. ..................................................................... 2

        A.        The Policy Restricts Protected Speech Based on Content and Viewpoint. ............ 2

        B.        The Policy was Adopted and Enforced to Retaliate against Plaintiffs' Speech. .... 6

        C.        The Policy Violates Plaintiffs' First Amendment Right to the Free Exercise of Religion. ................................................................................................................ 7

        D.        The Policy Places an Unconstitutional Condition on Plaintiffs' Continued Receipt of a Government Benefit. ....................................................................................... 8

        E.        The Policy Grants Unbridled Discretion and Violates the Michigan Home Rule City Act. ................................................................................................................ 9

        F.        The Policy Cannot Survive Strict Scrutiny. .......................................................... 9

CONCLUSION ...................................................................................................................... 10

## TABLE OF AUTHORITIES

*Cases:*

*Agency for International Development v. Alliance for Open Society International*,
　　133 S. Ct. 2321 (2013)..................................................................................................8, 9

*Bible Believers v. Wayne County*,
　　805 F.3d 228 (6th Cir. 2015) ............................................................................................6

*Bigelow v. Virginia*,
　　421 U.S. 809 (1975).....................................................................................................6, 10

*Board of County Commissioners, Wabaunsee County v. Umbehr*,
　　518 U.S. 668 (1996)...........................................................................................................8

*Brown v. Entertainment Merchants Association*,
　　564 U.S. 786 (2011).....................................................................................................9, 10

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
　　508 U.S. 520 (1993)...........................................................................................................7

*Cohen v. California*,
　　403 U.S. 15 (1971).............................................................................................................3

*Corning Glass Works v. Lady Cornella, Inc.*,
　　305 F. Supp. 1229 (E.D. Mich. 1969)................................................................................2

*Employment Division, Department of Human Resources of Oregon v. Smith*,
　　494 U.S. 872 (1990)...........................................................................................................7

*Holder v. Humanitarian Law Project*,
　　561 U.S. 1 (2010)...............................................................................................................3

*Holzemer v. City of Memphis,*
　　621 F.3d 512 (6th Cir. 2010) .............................................................................................8

*Hurley v. GLIB*,
　　515 U.S. 557 (1995).........................................................................................................10

*Katt v. Dykhouse*,
　　983 F.2d 690 (6th Cir. 1992) .............................................................................................6

*Lac Vieux Desert Band v. Michigan Gaming Control Board*,
　　276 F.3d 876 (6th Cir. 2002) .............................................................................................9

*Record Revolution Number 6, Inc. v City of Parma*,
　　638 F.2d 916 (6th Cir. 1980) .............................................................................................6

*Reed v. Town of Gilbert*,
    135 S. Ct. 2218 (2015) ..................................................................................................2

*Ruckelshaus v. Monsanto Company*,
    467 U.S. 986 (1984) ......................................................................................................8

*Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*
    547 U.S. 47 (2006) ....................................................................................................3, 9

*United States v. Alvarez*,
    567 U.S. 709 (2012) ......................................................................................................5

*West Virginia State Board of Education v. Barnette*,
    319 U.S. 624 (1943) ......................................................................................................3

*Wollschlaeger v. Governor of Florida*,
    848 F.3d 1293 (11th Cir. 2017) ....................................................................................3

## INTRODUCTION

Charlotte farmer Steve Tennes[1] was banished from the East Lansing Farmer's Market for publicly stating his religious beliefs about marriage on Facebook, while on his farm 22 miles outside East Lansing. This case has nothing to do with discriminatory conduct by Tennes; he has never refused service to any customer based on sexual orientation. It has everything to do with the City's disdain for Catholic teachings on marriage and Tennes' willingness to follow them. City officials (1) pressured Tennes to leave the Market in 2016 because of his Facebook post, (2) passed a Policy that restricted statements outside the City because of his public statement, and (3) applied that Policy to expel Tennes from the Market in March 2017 until he changes his beliefs. *See* V. Am. Compl. ¶¶ 121-157, 193-213, ECF No. 5, PageID.78-81, 86-88 ("Am. Compl."); *see also id.* at Ex. 1 (attaching the Facebook post to the denial letter), PageID.111-12. Tennes has never violated any law or discriminated against anyone, in Charlotte or at the East Lansing Farmer's Market. *Id.* at ¶¶ 107, 198, 211-12, PageID.77, 87-88. As East Lansing Mayor Mark Meadows explained in an email, this is all about a "*public statement* that their religion does not permit them to allow same sex couples to be married at their farm." Decl. of Stephen Tennes, Ex. A at 3 (emphasis added).[2]

Because of the City's banishment Tennes cannot exercise his right to speak while still accessing the Market which is already ongoing and scheduled to end October 29, 2017. Am. Compl. ¶ 92, PageID.75. The First Amendment forbids this. The City's actions to punish Tennes for his religious speech is unconstitutional, and this Court should issue a preliminary injunction to protect him from the government's disapprobation.

---

[1] In this Reply, Tennes refers to both Plaintiffs unless context indicates otherwise.
[2] Tennes obtained these emails and other documents when a reporter posted them online after Plaintiffs filed their preliminary injunction motion. *See* Tennes Decl. ¶ 2-3.

1

**ARGUMENT**

I.   **Preliminary Injunction Standard.**

The City agrees that Tennes is entitled to a preliminary injunction if he demonstrates likely success on his First Amendment claims. Def.'s Resp. in Opp'n to Pls.' Mot. for Prelim. Inj. 3-5, ECF No. 16, PageID.241-243 ("MPI Resp."). The City provides no evidence disputing Tennes' verified facts. This Court must therefore accept these facts as true for this motion. *See, e.g.*, *Corning Glass Works v. Lady Cornella, Inc.,* 305 F. Supp. 1229, 1231 (E.D. Mich. 1969) ("[S]tatements of fact in these affidavits may be taken as true where no counter-affidavits are filed in opposition to the motion for preliminary injunction.").These facts show that Tennes will likely succeed on his First Amendment and Home Rule claims.

II.  **The City Raises Irrelevant Motion to Dismiss Arguments.**

Although Tennes sought a preliminary injunction based on particular claims, the City's response addressed every claim raised in Tennes' amended complaint. *See* MPI Resp. 5-19, PageID.243-257. Since many of these claims are not relevant to Tennes' motion, this reply will address only those claims and arguments raised in Tennes' initial preliminary injunction brief. For the other claims, Tennes respectfully refers the Court to his Response to the City's Motion to Dismiss. Pls.' Opp'n to Def.'s Mot. to Dismiss, ECF No. 21 ("MTD Resp.").

III. **A Preliminary Injunction Should Issue.**

   A.   **The Policy Restricts Protected Speech Based on Content and Viewpoint.**

The government cannot "restrict expression because of its message, its ideas, its subject matter, or its content." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015). Yet that is exactly how City officials have applied the Policy. City officials apply its Policy to prohibit Tennes' speech about marriage because of the subject matter discussed (same-sex marriage) and the viewpoint conveyed (the view that marriage is a union between one man and one woman). Am. Compl. Exs.

2

1-2, PageID.111-112, 129. City officials allow other vendors to speak in support of same-sex marriage. Am. Compl. ¶¶ 217-229, PageID.88-90. That violates the First Amendment. *See* Pls.' Mem. in Supp. of Pls.' Mot. for Prelim. Inj. 7-13, ECF No. 8, PageID.151-157 ("MPI Br.").

In response, the City focuses on its Policy's text, arguing that it regulates only conduct. MPI Resp. 10-11, PageID.248-249. That is false. The Policy facially regulates speech by outlawing "communication" and publishing "a statement," and requiring businesses to align their "general business practice"—with no exception for expressive practices—with the City's "public policy against discrimination . . . ." *See* MTD Resp. § I, PageID.274 (explaining how Policy regulates speech), which the City interprets to mean "policy against anyone who does not share the City's marriage views." Courts do not allow officials to declare written and verbal communications to be conduct based on such *ipse dixit*. *See Wollschlaeger v. Governor of Fla.*, 848 F.3d 1293, 1308 (11th Cir. 2017) (en banc) ("Saying that restrictions on writing and speaking are merely incidental to speech is like saying that limitations on walking and running are merely incidental to ambulation.").

Moreover, the City's Policy regulates speech as applied regardless of what the Policy does on its face. Courts regularly invalidate laws that facially regulate conduct when applied to speech. *See, e.g., Holder v. Humanitarian Law Project*, 561 U.S. 1, 27-28 (2010) (explaining that law against providing material support to terrorists applied to speech when it restricted legal advice); *Hurley v. GLIB.,* 515 U.S. 557, 572-73 (1995) (invalidating application of public accommodation law for applying to parade); *Cohen v. California*, 403 U.S. 15, 16, 18-19 (1971) (invalidating application of breach of the peace law for restricting jacket with words).

Such an application happened here. Although Tennes has always complied with the City's Human Relations Ordinance at the Farmer's Market, the City incorporated that ordinance into its

3

Policy and applied it to punish Tennes for expressing his personal views about marriage and his intent to exercise those views on his farm outside East Lansing. Am. Compl. ¶¶ 121-157, 193-213, Ex. 1, PageID.78-81, 86-88, 111-112.

This targeting of Tennes' speech is confirmed in the City's internal emails. *See* Tennes Decl. Ex. A. In August 2016, Tennes discussed his religious beliefs about marriage on Facebook and how those beliefs shaped which weddings he participated in on his farm. Am. Compl. ¶ 119-20, PageID.78. Mayor Mark Meadows saw that post and, less than 24 hours later, emailed City colleagues asking if Tennes participated in the Market. Tennes Decl. Ex. A at 1. Upon learning that he did, the Mayor told officials that it "[m]ight be better to have them not come" to the Market. *Id.* When Country Mill stopped booking weddings, the Parks and Recreation Director and the City Manager recommended that the City "withdraw [its] request that they refrain from participating in the market tomorrow." *Id.* at 2-6.

The Mayor did not agree, because he did not care what Tennes did or didn't do. He cared what Tennes said and believed. As the Mayor confirmed, the problem was "a public statement that their religion does not permit them to allow same sex couples to be married at their farm." *Id.* at 3. Another City Council member agreed with the Mayor that he would "prefer [to] maintain[] the request not to vend until we get more direct assurances." *Id.* at 5. The Parks and Recreation Director assured that Tennes had confirmed that "they will serve all customers regardless of sexual orientation" and that "[t]o [the City's] knowledge, they have always served any customer at [the] farmer's market." *Id.* at 8. But these reassurances did not change Tennes' viewpoint or beliefs. So, the City decided to "maintain [its] request that Country Mill voluntarily elect not to attend the market" that Sunday. *Id.* at 7. City officials then created a new Policy, instructed the Market Planning Committee not to invite Tennes back to the Market, reviewed Tennes' application

4

internally, and denied him access to the Market altogether. Am. Compl. ¶¶ 141-157, PageID.80-81; *Id.* at ¶¶ 193-213, PageID.86-88; Tennes Decl. Ex. A at 9-16. The City's effort to punish a view it detests could not be clearer.

The City now claims that it can regulate Tennes' speech as speech incidental to illegal conduct. MPI Resp. 11, PageID.249 (citing *Rumsfeld v. Forum for Acad. & Inst. Rights, Inc.*, 547 U.S. 47 (2006)). This doctrine provides no help. It only allows the City to restrict speech—like offers of solicitation or a "White Applicants Only" sign—that commences actual illegal conduct. *See* MTD Resp. § I.B, PageID.276 (explaining this doctrine); *United States v. Alvarez*, 567 U.S. 709, 717 (2012) (acknowledging "speech integral to criminal conduct" exception). Tennes' Facebook post is not incidental to any conduct. The post discusses his personal religious convictions about marriage. Am. Compl. Ex. 1, PageID.112. Nor is the post incidental to any *illegal* conduct. While the post mentions Tennes' intent not to participate in religious ceremonies he objects to, no federal law, Michigan law, or Charlotte law requires Tennes to participate in such ceremonies on his farm in Charlotte. In fact, Tennes has the First Amendment right to not participate in a sacramental ceremony that violates his religious beliefs. *See W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 639 (1943) (protecting right of Jehovah's Witness students to not participate in what they viewed as a religious ritual).

The City has not sought to ban speech incidental to *actual* illegal conduct in Charlotte; it has sought to ban speech incidental to what the City *considers* illegal conduct *if it had hypothetically occurred in East Lansing*.[3] But the City has no basis to punish speech—whether

---

[3] To be clear, Tennes does not discriminate on the basis of status, and so his speech and business practices would not violate the City's Ordinance even if his farm were located in East Lansing. Moreover, his speech and business practices are constitutionally protected everywhere. But, Tennes understands that the City holds the position that if he were in East Lansing his Facebook post and business policies would violate the Ordinance.

occurring inside or outside the City—for discussing what legally occurs outside the City. *See Bigelow v. Virginia*, 421 U.S. 809, 824–25 (1975) (invalidating law banning abortion advertisement in Virginia when advertisement discussed activities in New York where advertisement was legal); *Katt v. Dykhouse*, 983 F.2d 690, 695-97 (6th Cir. 1992) (protecting right to advertise in Michigan about conduct done in Florida because that conduct, although illegal in Michigan, was legal in Florida); *Record Revolution No. 6, Inc. v. City of Parma*, 638 F.2d 916, 936–37 (6th Cir. 1980), *vacated and remanded on other grounds*, 456 U.S. 968 (1982) (invalidating bans on advertisements for drug paraphernalia legally available outside city limits). And the City surely has no basis to punish speech for discussing what is constitutionally protected everywhere. The City's post-hoc justifications for excluding Tennes are just as unconstitutional as its real reasons for doing so.

### B. The Policy was Adopted and Enforced to Retaliate against Plaintiffs' Speech.

As for Tennes' retaliation claim, the City disputes only the first element of this claim—whether Tennes "engaged in a constitutionally protected activity." MPI Resp. 13, PageID.251. But Tennes has already shown that his Facebook post about his religious views deserves protection. *See* MTD Resp. § I, PageID.274. For the City to compare this post to unprotected actions "like violence" highlights the chasm between the City's views and basic First Amendment principles. MPI Resp. 12, PageID.250 (citation omitted). "The First Amendment offers sweeping protection that allows all manner of speech to enter the marketplace of ideas. This protection applies to loathsome and unpopular speech with the same force as it does to speech that is celebrated and widely accepted." *Bible Believers v. Wayne Cty.*, 805 F.3d 228, 243 (6th Cir. 2015) (en banc). Just because the City dislikes the Catholic Church's view of marriage does not give the City the right to punish and exclude those who adhere to it.

6

### C. The Policy Violates Plaintiffs' First Amendment Right to the Free Exercise of Religion.

The City's actions violate the Free Exercise Clause for two reasons. First, the City "regulat[es] [] religious *beliefs* as such" by excluding Tennes from the Market for voicing his religious beliefs. *Emp't Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 877 (1990) (holding that the government regulates belief when it "punish[es] the expression of religious doctrine" or "impose[s] special disabilities on the basis of religious views"). Second, the City targets particular religious beliefs—those it disfavors—by applying a gerrymandered policy to punish Tennes for voicing his religious beliefs outside the City. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 535 (1993) (holding that a law is not neutral and generally applicable if it targets religious practice in operation). The facts bear this out as evidenced by the City's pre-Policy actions toward Tennes, officials' statements to Tennes, the timing of the City creating its Policy, the way its Policy restricts activities outside the City, and now the City's internal emails. Am. Compl. ¶¶ 121-157, 193-213, Ex. 1, PageID.78-81, 86-88, 111-112; Tennes Decl. Ex A.

Ignoring all of this, the City acts as if its Policy is a typical anti-discrimination law that is neutral and generally applicable, passed years ago, consistently applied only to conduct, and neither born of religious animus nor directed against people of faith like Tennes. MPI Resp. 6, PageID.244. That is not this reality. At every step, the City acted and continues to act to exclude Tennes *because of* his religious beliefs, pressuring him not to come to the Market because of those beliefs, creating a gerrymandered policy that punishes Tennes for expressing those beliefs outside the City, and leaving a paper trail confirming the City's anti-religious goals. Am. Compl. ¶¶ 121-157, 193-213, Ex. 1, PageID.78-81, 86-88, 111-112; Tennes Decl. Ex A.

7

A gerrymandered policy that is being applied because of religious animus is not neutral or generally applicable. Nor does it comply with the First Amendment.

### D. The Policy Places an Unconstitutional Condition on Plaintiffs' Continued Receipt of a Government Benefit.

By excluding Tennes from the Market if he expresses and exercises his religious beliefs, the City places an unconstitutional condition on Tennes. The City responds by largely repeating its motion to dismiss arguments: (1) that the Market is not a public benefit but a commercial transaction or relationship on which the City can place any condition, and (2) that the City has not pressured Tennes to give up constitutional rights. Both arguments fail.

First, the Farmer's Market is a public benefit. Unlike a contract or commercial transaction where a party sells goods or services to the City, vendors at the Market sell goods to private citizens. The City merely licenses these vendors for the benefit of accessing the Market and selling their goods. Am. Compl. ¶¶ 99-101, PageID.76, Tennes Decl. Ex. A at 24-27. Vendors sign a "licensing agreement" with the City. *Id.* Such a license or permit is a classic public benefit subject to the unconstitutional conditions doctrine. *See* MTD Resp. § V, PageID.288. *See also Holzemer v. City of Memphis*, 621 F.3d 512 (6th Cir. 2010) (describing a permit to operate a buggy company as a benefit a city cannot withdraw for unconstitutional reasons).

Nor does Tennes' success even turn on this distinction. The City cannot place unconstitutional conditions on licenses or city contracts. *See, e.g., Bd. of Cty. Comm'rs, Wabaunsee Cty. v. Umbehr*, 518 U.S. 668, 681 (1996) (applying unconstitutional conditions doctrine to "independent government contractors"). Any contract condition must be "rationally related to a legitimate Government interest . . . ." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1007 (1984). And here, the City has no legitimate interest in forcing Tennes to stop speech or religiously motivated acts that are unrelated to the Market and occur outside the City. *See Agency for Int'l*

*Dev. v. All. for Open Soc'y Int'l, Inc.*, 133 S. Ct. 2321, 2328 (2013) (forbidding any condition on funding that "regulate[s] speech outside the contours of the program itself").

Second, the City has pressured Tennes by excluding him from the Market where he makes his livelihood selling produce to anyone willing to buy it. Am. Compl. ¶¶ 48-56, PageID.72. By conditioning his rights on great monetary loss, the City could not exert greater pressure on Tennes. These principles were not upset by *Rumsfeld*, 547 U.S. 47, either. *Contra* MPI Resp. 14, PageID.252. The law schools in *Rumsfeld* violated a valid law when they excluded military recruiters from their rooms, and the schools had no constitutional right to exclude these recruiters. 547 U.S. at 56-58. In contrast, Tennes has violated no law in Charlotte or anywhere else and has a constitutional right to speak his religious beliefs and operate his farm according to those beliefs. The City cannot condition Market access on forfeiture of these rights.

### E. The Policy Grants Unbridled Discretion and Violates the Michigan Home Rule City Act.

In its preliminary injunction response, the City does not address Tennes' unbridled discretion and merely duplicates its Home Rule arguments. So for these issues, Tennes rests on his prior briefing and his response to the City's Motion to Dismiss that addresses these issues. *See* MPI Br. 11-13, PageID.155-157; MTD Resp. § VIII, X, PageID.293, 296.

### F. The Policy Cannot Survive Strict Scrutiny.

When an ordinance "restrict[s] First Amendment rights…the ordinance is subject to the test commonly known as 'strict scrutiny'" which requires the City to prove its law narrowly serves a compelling state interest. *Lac Vieux Desert Band v. Mich. Gaming Control Bd.*, 276 F.3d 876, 879 (6th Cir. 2002). The City can do neither.

First, the City cannot prove a compelling interest because punishing Tennes does not advance any legitimate goal. *See Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 799 (2011)

9

(requiring "the curtailment of free speech [] be actually necessary to the solution") (citations omitted). Although the City asserts the need to stop discrimination, MPI Resp. 8, PageID.246, Tennes does not discriminate; he sells apples to everybody. Nor does his speech and religious exercise constitute discrimination. So punishing Tennes for this achieves nothing, no matter where Tennes exercises his rights. *See Hurley*, 515 U.S. at 578 (applying public accommodation to speech "to produce a society free of the corresponding biases" was "a decidedly fatal objective").

Even more fatal, the City has no interest in punishing speech and religious exercise *that occur legally outside the City*. The City's interest to stop discrimination it considers illegal in East Lansing does not cover legal actions in Charlotte. *See Bigelow*, 421 U.S. at 827–28 (Virginia could not ban speech about legal activities in New York because "Virginia is … in effect, advancing an interest in shielding its citizens from information about activities outside Virginia's borders, activities that Virginia's police powers do not reach. This asserted interest, even if understandable, was entitled to little, if any, weight under the circumstances.").

Second, the City can achieve any valid interest in a narrower way—by stopping actual discrimination in East Lansing. The fact that East Lansing forsakes this legitimate goal to punish Tennes underscores just how much the City detests Tennes' religious views on marriage. The First Amendment was enacted precisely to prohibit such abuse of governmental power.

## CONCLUSION

Tennes is losing sales and income from the Market because the City dislikes his religious views and that he has expressed them publicly. That severely pressures Tennes to forgo his freedoms. Thus, each day, he suffers irreparable harm to his First Amendment rights. Accordingly, Tennes respectfully asks this Court to grant his preliminary injunction motion and promptly stop the harm and ongoing constitutional violations.

Respectfully submitted August 11, 2017,


By: _s/ Katherine L. Anderson_
Jeremy D. Tedesco (AZ Bar No. 023497)*
Jonathan A. Scruggs (AZ Bar No. 030505)*
Samuel D. Green (AZ Bar No. 032586)*
Katherine L. Anderson (AZ Bar No. 033104)*
**Alliance Defending Freedom**
15100 N. 90th Street
Scottsdale, Arizona  85260
Telephone: (480) 444-0020
Fax:  (480) 444-0028
jtedesco@ADFlegal.org
jscruggs@ADFlegal.org
sgreen@ADFlegal.org
kanderson@ADFlegal.org

David A. Cortman (GA Bar No. 188810)*
Rory T. Gray (GA Bar No. 880715)*
**Alliance Defending Freedom**
1000 Hurricane Shoals Rd. NE
Ste. D-1100
Lawrenceville, GA 30043
Telephone:  (770) 339-0774
Fax:  (770) 339-6744
dcortman@ADFlegal.org
rgray@ADFlegal.org

James R. Wierenga (P48946)
Jeshua T. Lauka (P71958)
**David & Wierenga, P.C.**
99 Monroe Avenue, N.W.
Suite 1210
Grand Rapids, MI 49503
Telephone:  (616) 454–3883
Facsimile:  (616) 454–3988
jim@dwlawpc.com
jeshua@dwlawpc.com

John Bursch (P57679)
**Bursch Law PLLC**
9339 Cherry Valley Avenue, SE
Suite 78
Caledonia, MI 49316
Telephone:  (616) 450-4235
jbursch@burschlaw.com

ATTORNEYS FOR PLAINTIFFS

*Admitted to this Court

11

## CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2017, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following counsel of record who are registered users of the ECF system:

Michael S. Bogren
Plunkett Cooney
950 Trade Centre Way, Ste. 310
Kalamazoo, MI 49002
269-226-8822
mbogren@plunkettcooney.com

Thomas M. Yeadon
McGinty Hitch Housefield Person
Yeadon & Anderson PC
601 Abbott Rd.
P.O. Box 2502
East Lansing, MI 48826
517-351-0280
tomyeadon@mcgintylaw.com

By: s/ Katherine L. Anderson
Katherine L. Anderson (AZ Bar No. 033104)*
**Alliance Defending Freedom**
15100 N. 90th Street
Scottsdale, Arizona  85260
Telephone:  (480) 444-0020
Fax:  (480) 444-0028
kanderson@ADFlegal.org

ATTORNEY FOR PLAINTIFFS