UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| COUNTRY MILL FARMS, LLC and STEPHEN TENNES, Plaintiffs, -v- CITY OF EAST LANSING, Defendant. | No. 1:17-cv-487 Honorable Paul L. Maloney |

## OPINION AND ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION

Stephen Tennes owns and operates Country Mill Farms, which is located in Charlotte, Michigan. On Sundays for each market season from 2010 to 2016, Tennes and Country Mill Farms sold produce at the East Lansing Farmer's Market. The City of East Lansing operates the Farmer's Market. Country Mill submitted a Vendor Application to sell produce at the Farmer's Market for the 2017 season. The City denied the application. Tennes and Country Mill then filed this lawsuit, asserting that the denial of the application violated various freedoms protected by the First Amendment and several state laws. Tennes and Country Mill also filed a motion for a preliminary injunction (ECF No. 7), seeking access to the Farmer's Market for the remainder of the season. On September 13, 2017, the Court held a hearing on Plaintiffs' motion and on the City's pending motion to dismiss.

Because the Court finds that Tennes and Country Mill have a substantial likelihood of success on at least one of their claims brought under the First Amendment, the Court will grant the motion for a preliminary injunction.

I.

A district court has discretion to grant or deny preliminary injunctions. *Planet Aid v. City of St. Johns, Michigan*, 782 F.3d 318, 323 (6th Cir. 2015). When deciding a motion for a preliminary injunction, a court should consider and balance four factors: (1) whether the plaintiff has established a substantial likelihood or probability of success on the merits; (2) whether there is a threat of irreparable harm to the plaintiff; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by granting injunctive relief. *Southern Glazer's Distribs. of Ohio v. Great Lakes Brewing Co.*, 860 F.3d 844, 850 (6th Cir. 2017). The four factors are not prerequisites that must be established at the outset, but are interconnected considerations that must be balanced together. *Id.* The United States Supreme Court has stated that a preliminary injunction is an "extraordinary and drastic remedy," *Munaf v. Geren*, 553 U.S. 674, 690 (2008) (citation omitted) that should "only be awarded upon a clear showing that the plaintiff is entitled to such relief," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted).

For First Amendment challenges, the balance of the four factors turns on the substantial likelihood of success on the merits. The Sixth Circuit has held that "even minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief." *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d 341, 363 (6th Cir. 1998) (quoting *Newsome v. Norris*, 888 F.2d 371, 378 (6th Cir. 1989)). And, where the plaintiff shows a likelihood that the challenged law is unconstitutional, "no substantial harm to others can be said to inhere in its

enjoinment" and "it is always in the public's interest to prevent violation of a party's rights." *Déjà Vu of Nashville, Inc. v. Metro. Gov't of Nashville and Davidson Cty., Tennessee*, 274 F.3d 377, 400 (6th Cir. 2001).

## II.

Some context is necessary to understand the City's denial of the application and the Court's decision.

### A.

In 1972, the City of East Lansing adopted what Plaintiffs are referring to as the Human Relations Ordinance. (ECF No. 5 Compl. ¶¶ 158 and 195.) The Ordinance declares the public policy of the municipality.

> It is hereby declared to be contrary to the public policy of the City of East Lansing for any person to deny any other person the enjoyment of his/her civil rights or for any person to discriminate against any other person in the exercise of his/her civil rights or to harass any person because of religion, race, color, national origin, age, height, weight, disability, sex, marital status, sexual orientation, gender identity or expression, student status, or because of the use by an individual of adaptive devices or aids.

City of East Lansing, MI., Code § 22-31. The word "harass" is defined to include both conduct and communication.

> To harass means to have physical conduct or communication which refers to an individual protected under this article, when such conduct or communication demeans or dehumanizes and has the purpose or effect of substantially interfering with an individual's employment, public accommodations or public services, education, or housing, or creating an intimidating, hostile, or offensive employment, public accommodations, public services, educational, or housing environment.

*Id.* § 22-32. The City's Code defines "places of public accommodations" and further outlines practices that are prohibited when providing public accommodations.

> (a) Definitions. As used in this subsection:
> Place of public accommodation means a business, or an educational, refreshment, entertainment, recreation, health or transportation facility, or institution of any kind, whether licensed or not, whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold or otherwise made available to the public.
> . . .
> (b) Prohibited practices. Except where permitted by law, a person shall not:
> (1) Deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion, race, color, national origin, age, height, weight, disability, sex, marital status, sexual orientation, gender identity or expression, student status, or because of the use by an individual of adaptive devices or aids.
> (2) Print, calculate, post, mail, or otherwise cause to be published a statement, advertisement, notice, or sign which indicates that the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodations or public service will be refused, withheld from, or denied because or religion, race, color, national origin, age, height, weight, sex, disability, marital status, sexual orientation, gender identity or expression, or student status, or because of an individual's use of adaptive devices or aids, or that an individual's patronage of, or presence at a place of public accommodation, is objectionable, unwelcome, unacceptable, or undesirable because of religion, race, color, national origin, age, height, weight, disability, sex, marital status, sexual orientation, gender identity or expression, or student status or because of the use by an individual of adaptive devices or aids.

*Id.* § 22-35. The City's Code contains an enforcement provision, which authorizes the human relations committee to investigate, hold hearings, and issue orders on complaints alleging a violation of the article. *Id.* 22-38(b). Convictions for violations of the ordinance may result in a fine of not more than $500 and imprisonment for not more than 90 days or both. *Id.* § 22-38(h)(11). When the alleged violator is operating by virtue of a license issued by the City, the license may be suspended or revoked. *Id.* § 22-38(i).

B.

According to the complaint, in 2014, Tennes was contacted by two women who were seeking to have their wedding ceremony at an orchard (Compl. ¶ 110).[1] Because "promoting and participating" in a same-sex wedding at Country Mill would violate Tennes's religious beliefs, he referred the women to another orchard in the area. (*Id.* ¶ 111.) On August 22, 2016, one of women posted a message on Facebook discouraging people from patronizing Country Mill because Tennes had declined to participate in her wedding. (*Id.* ¶ 116.) In the ensuing discussion, questions were posed about Tennes's religious beliefs. (*Id.* ¶ 119.)

On Wednesday, August 24, 2016, Tennes posted a statement about his religious beliefs on Facebook.[2] (Compl. ¶ 120.) Based on his Catholic faith, Tennes believes that marriage is a sacramental union between one man and one woman. (*Id.* ¶ 5.) Tennes "honors his religious belief when hosting and participating in weddings at Country Mill." (*Id.*) Tennes explained that, because of his religious beliefs, he would refer any request to celebrate same-sex wedding ceremonies at Country Mill to another orchard in the area. (*Id.* ¶ 120.)

The City almost immediately became aware of Tennes's message. Plaintiffs have filed emails exchanged between City employees on Thursday, August 25. (ECF No. 23-1 Emails.) Mark Meadows, the mayor, sought confirmation that Country Mill was a vendor at the Farmer's Market, remarked that there was a story that Country Mill would not host same-sex weddings because of religious beliefs, and stated that "[w]e need to find out if our ordinance

---

[1] The controlling pleading is an amended, and verified, complaint.
[2] The actual text of this message is not included in the record presented to the Court.

is implicated." (*Id.* PageID.319.) Meadows also commented that "it might be better to have them not come [to the Farmer's Market] until all this can be straightened out." (*Id.*) Plaintiffs allege that, on Friday, August 26, the Parks and Recreation Director for the City called Country Mill and asked that they agree not to attend the Farmer's Market on Sunday, August 28. (Compl. ¶ 124; *see* ECF No. 23-1 Emails PageID.320.)

Because of the pressure of the City, Tennes decided to temporarily stop booking future weddings at Country Mill. (Compl. ¶ 128; *see* ECF No. 23-1 Emails PageID.320.) Tennes announced his decision on Facebook and also informed the City. (Compl. ¶ 129; *see* ECF No. 23-1 Emails PageID.320.) Plaintiffs allege the City did not stop asking them to leave the Farmer's Market. (Compl. ¶¶ 129–30.) After seeking feedback from other city officials, George Lahanas, the City Manager, stated in an email that the City would maintain its request that "Country Mill voluntarily elect not to attend the market tomorrow." (ECF No. 23-1 Emails PageID.325.)

Country Mill did attend the Farmer's Market on Sunday, August 28. (Compl. ¶ 137.) Country Mill attended the Farmer's Market for the rest of the 2016 season. (*Id.* ¶ 137.)

After August 28, the City did not further attempt to convince Country Mill to stay away from the Farmer's Market for the 2016 season. From the email chains, the Court infers that the City was satisfied that Country Mill was not violating its ordinance. On August 27, Meadows identified this concern in one of his email.

> As Tim knows, DuPuis was not the only inquiry about this. I am not sure whether not hosting any weddings actually addresses the issue which is a public statement that their religion does not permit them to allow same sex couples to be married at their farm. Do their religious beliefs permit them to sell apples to a same sex couple at the farmers market? Can they sign an assurance

6

> that they will provide services to all persons, regardless of their sexual orientation?

(ECF No. 23-1 PageID.321.) On Monday, August 29, the day after the Farmer's Market, Meadow sent a follow-up email, raising the same issue. "Did they assure us that they will service every customer, regardless of sexual orientation?" (*Id.* PageID.326.) Lahanas responded that Country Mill had provided that assurance.

> Yes, they have assured us that they will serve all customers regardless of sexual orientation. To our knowledge, they have always served any customer at our farmer's market. In my conversation with Diana Tennes the above answer also applies to the Orchard Barn Event Venue, where they will continue to host special events but not weddings.

(*Id.*)

### C.

Two significant events occurred after the end of the 2016 season. First, on December 12, 2016, Tennes posted another message on Country Mill's Facebook page announcing that Country Mill would again host wedding ceremonies, but only ceremonies involving one man and one woman.

> This past fall our family farm stopped booking future wedding ceremonies at our orchard until we could devote the appropriate time to review our policies and how we respectfully communicate and express our beliefs. The Country Mill engages in expressing its purpose and beliefs through the operation of its business and it intentionally communicates messages that promote its owners' beliefs and declines to communicate messages that violate those beliefs. The Country Mill family and its staff have and will continue to participate in hosting the ceremonies held at our orchard. It remains our deeply held religious belief that marriage is the union of one man and one woman and Country Mill has the First Amendment Right to express and act upon its beliefs. For this reason, Country Mill reserves the right to deny a request for services that would require it to communicate, engage in, or host expression that violates the owners' sincerely held religious beliefs and conscience. Furthermore, it remains our religious belief that all people should be treated with respect and dignity

regardless of their beliefs and background. We appreciate the tolerance offered to us specifically regarding our participation in hosting wedding ceremonies at our family farm.

(ECF No. 5-1 PageID.112.) Second, the City amended the Vendor Guidelines for its Farmer's Market.[3] A provision was added to Section 6 of the Vendor Guidelines. The new provision states

> 6) VENDORS WILL EMBODY THE SPIRT OF THE MARKET BY:
> Multiple factors that affect the success of every vendor are considered.
> . . .
> m. Complying with the City of East Lansing's Civil Rights ordinances and the public policy against discrimination contained in Chapter 22 of the East Lansing City Code while at the ELFM and as a general business practice.

(ECF No. 5-1 PageID.114-15.). The Vendor License Agreement requires the applicant to check a box indicating that he or she has read and agrees to all of the 2017 Vendor Guidelines. (*See* Compl. ¶ 150.)

The combination of these two events ultimately led to the denial of Country Mill's vendor application for the 2017 season at the Farmer's Market. In January 2017, the Market Planning Committee for the Farmer's Market met to identify and invite vendors for the 2017 season. (Compl. ¶ 193.) From 2011 through 2016, the Planning Committee had invited Country Mill to participate in the Farmer's Market, eliminating the need for County Mill to apply. (*Id.* ¶¶ 96–98, 103.) The City, however, barred the Planning Committee from inviting Country Mill to the Farmer's Market for 2017. (*Id.* ¶ 194.) The City further instructed the Planning Committee that, should Country Mill submit a vendor application, the application

---

[3] The record does not establish the date when the amendment occurred.

had to be sent to the City for review. (*Id.* ¶ 195.) The Planning Committee did not invite Country Mill to be a vendor. (*Id.* ¶ 196.)

Country Mill submitted a vendor application, which was reviewed by the City. (Compl. ¶¶ 197 and 199.) On March 7, 2017, the City sent Diana Tennes a letter denying Country Mill's vendor application. (*Id.* ¶ 200.)

> It was brought to our attention that The Country Mill's general business practices do not comply with East Lansing's Civil Rights ordinances and public policy against discrimination as set forth in Chapter 22 of the City Code and outlined in the 2017 Market Vendor Guidelines, as such, The Country Mill's presence as a vendor is prohibited by the City's Farmer's Market Vendor Guidelines.

(ECF No. 5-2 PageID.129.) Steve Tennes emailed the city official who signed the letter asking for clarification about business practices that were objectionable. (Compl. ¶ 204.) The City sent a second letter, this time referencing Tennes's December Facebook post. (*Id.* ¶ 205.)

> It was brought to our attention this winter that your facebook post dated December 12, 2016 outlines a business practice that would be considered a violation of the City of East Lansing Civil Rights Ordinances and our public policy against discrimination contained in Chapter 22 of the East Lansing City Code.

(ECF No. 5-1 PageID.111.)

### III.

### A.

Plaintiffs' first cause of action or count asserts that the City's decision to deny their vendor application violates the Free Speech Clause of the First Amendment. Within that cause of action, Plaintiffs claim that the decision constitutes impermissible retaliation.

9

For a claim for retaliation in violation of the First Amendment, a plaintiff must show he or she (1) was engaged in a constitutionally protected activity, (2) the defendant's adverse action caused the plaintiff an injury that would deter or chill a person of ordinary firmness from continuing to engage in that activity, and (3) a causal connection such that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights. *Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 586–87 (6th Cir. 2008); *Thaddeas-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). The causal connection can be established by direct or circumstantial evidence, "including showing a temporal proximity between engaging in protected activity and suffering an adverse [ ] action that may create an inference of causation." *Eckerman v. Tennessee Dep't of Safety*, 636 F.3d 202, 209 (6th Cir. 2010) (citations omitted). For situations where temporal proximity provides the causal connection, courts consider the totality of the circumstances to decide whether an inference of a retaliatory motive can be drawn. *Holzemer v. City of Memphis*, 621 F.3d 512, 528 (6th Cir. 2010) (quoting *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 401 (6th Cir. 2010)).

In its response to the motion for a preliminary injunction, the City argues only that Plaintiffs did not engage in protected conduct. (ECF No. 16 Def. Resp. at 13 PageID.251.) The City focuses on the act of excluding same-sex wedding ceremonies from Country Mill. But, even if that conduct is not protected, Plaintiffs still engaged in protected activity when Tennes communicated his religious beliefs on Facebook in August and December. Even if the City is correct that talking about discrimination is not protected, Plaintiffs also talked about their religious beliefs, which is a protected activity. For the first element in the retaliation claim the City cannot ignore the portions of the Facebook posts that would be

protected speech. The City does not explicitly challenge the second or third element of a retaliation claim.[4]

Plaintiffs have established a substantial likelihood of success on the merits for the First Amendment retaliation claim. For this motion, Plaintiffs do not have to prove, in full, their retaliation claim, and the findings of fact and conclusions of law reached by the Court are not binding at a trial on the merits. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Plaintiffs posted messages on Facebook communicating their religious beliefs. Those messages constitute protected activity. The City took an adverse action; Country Mill was not allowed to participate in the 2017 Farmer's Market. Considering the totality of the circumstances, a factfinder could infer a connection between the Plaintiffs' expressions about their religious beliefs on Facebook and the City's ultimate decision to deny Country Mill's vendor application. After Tennes posted his first message in August, the City asked him to voluntarily not attend the market the following Sunday. Even after Tennes informed the City that Country Mill had temporarily stopped all weddings at Country Mill, the City continued to ask Plaintiffs not to attend the market. Within months, the City amended its Vendor Guidelines to incorporate the City's non-discrimination ordinance. The City also singled Country Mill out for special treatment by ordering the Farmer's Market Planning Commission not to invite Country Mill to the 2017 market and by requiring Country Mill's

---

[4] The Court has not considered whether the City excluded Plaintiffs because of unprotected conduct, as that argument would address the causation element, which the City did not raise in its response.

11

vendor application to be forwarded to the City for consideration. The combination of these acts supports Plaintiffs' claim.

B.

Plaintiffs' fourth cause of action or count asserts that the City amended its Vendor Guidelines to target Plaintiffs for the exercise of their religious beliefs.

"The free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires." *Emp't Div., Dep't of Human Resources of Oregon v. Smith*, 494 U.S. 872, 877 (1990) *overruled by statue* (1993). But, the Free Exercise Clause also extends to statutes regulating conduct motivated by religious beliefs. The Free Exercise Clause is implicated "if the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 510, 532 (1993); *see Prater v. City of Burnside, Kentucky*, 298 F.3d 417, 427 (6th Cir. 2002) ("This Clause protects not only the right to hold a particular religious belief, but also the right to engage in conduct motivated by that belief.") (citing *Smith*, 494 U.S. at 822).

In its Free Exercise opinions, the Supreme Court has "long recognized a distinction between the freedom of individual belief, which is absolute, and the freedom of individual conduct, which is not." *Bowen v. Roy*, 476 U.S. 693, 699 (1986). Generally, "a law that is neutral and of general applicability need not be justified by a compelling government interest even if that law has the incidental effect of burdening a particular religious practice." *City of Hialeah*, 508 U.S. at 531. The Court, however, has "been careful to distinguish such laws from those that single out the religious for disfavored treatment." *Trinity Lutheran Church*

of Columbia, Inc. v. Comer, 137 S. Ct. 2012, 2020 (2017). Thus, when "the object of a law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral, and is invalid unless it is justified by a compelling interest and is narrowly tailored to advance that interest." City of Hialeah, 508 U.S. at 532 (internal citation omitted).

This Court must consider carefully whether a governmental policy evidences hostility to the Free Exercise Clause, "masked" or "overt." City of Hialeah, 508 U.S. at 534; see Walz v. Tax Comm'n of New York City, 397 U.S. 664, 696 (1970) ("The Court must survey meticulously the circumstances of governmental categories to eliminate, as it were, religious gerrymanders.") (Harlan, J., concurring). The Sixth Circuit summarized the general rule and the exception to the Free Exercise Clause in Ward v. Polite, 667 F.3d 727 (6th Cir. 2012).

> Under this guarantee, public authorities may enforce neutral and generally applicable rules and may do so even if they burden faith-based conduct in the process. That is why Oregon could deny unemployment benefits to two members of a Native American tribe found guilty of using a proscribed drug, peyote, even when they used the substance for sacramental purposes. Employment Div. v. Smith, 494 U.S. 872, 890 (1990). The rule comes with an exception. If the law appears to be neutral and generally applicable on its face, but in practice is riddled with exemptions or worse is a veiled cover for targeting belief or a faith-based practice, the law satisfies the First Amendment only if it "advance[s] interests of the highest order and [is] narrowly tailored in pursuit of those interests." Church of Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 546 (1993). That is why the City of Hialeah (Florida) could not enforce ordinances that purported to be neutral and generally applicable on their face---regulating the keeping and killing of animals---but in practice targeted the adherents of one faith (the Santeria religion) and the actions of one faith (animal sacrifices). Id. at 524-25, 533-35, 113 S. Ct. 2217.

Id. at 738.

In its response to the motion for a preliminary injunction, the City asserts the following arguments: (1) the policy is facially neutral and generally applicable, and (2) the

policy was enforced against Plaintiffs because of conduct, not beliefs. (ECF No. 16 Def. Resp. at 5-7 PageID.243-45.) Plaintiffs do not contest the first assertion in their motion for a preliminary injunction or in their response. Plaintiffs do contest the second assertion.

Plaintiffs have established a substantial likelihood of success on the merits of their Free Exercise claim. Again, Plaintiffs do not have to prove the full merits of their Free Exercise claim to be entitled to a preliminary injunction. *See Camenisch*, 451 U.S. at 395. On the record before this Court, Plaintiffs have put forth sufficient evidence to show that the change in the Vendor Guidelines was a "masked," *City of Hialeah*, 508 U.S. at 534, or "veiled," *Ward*, 667 F.3d at 738, attempt to regulate their religious beliefs or their religiously-motivated conduct. The City's two defense--- the ordinance is facially neutral and that it targeted only conduct---are necessary but not sufficient to undermine Plaintiffs' claim. "Official action that targets religious conduct for distinctive treatment cannot be shielded by mere compliance with the requirement of facial neutrality." *City of Hialeah*, 508 U.S. at 534.

The context in which the Vendor Guidelines were amended and then applied to Country Mill supports Plaintiffs' claim that their religious beliefs or their religiously-motivated conduct was the target of the City's actions. For Free Exercise claims, the object or purpose of a governmental act can be determined by both direct and circumstantial evidence. *City of Hialeah*, 508 U.S. at 540. In that case, the Court considered the events leading to the enactment of several ordinances to conclude that the "ordinances were enacted 'because of,' not merely 'in spite of,' their suppression of [ ] religious practice." *Id.* The same set of events that supports Plaintiffs' retaliation claim also supports Plaintiffs' Free Exercise claim. A factfinder could infer that the change in the Vendor Guidelines was

motivated by Plaintiffs' religious beliefs or their religiously-motivated conduct. And, the City's hostility to Plaintiffs' religion or religious conduct was then manifested when the City used its facially neutral and generally applicable ordinance to deny Plaintiffs' Vendor Application.

For this motion, the City has not asserted that the change the Vendor Guidelines and the ordinance are justified by a compelling interest or that the Vendor Guidelines and the ordinance are narrowly tailored to advance that interest. Elsewhere, the City has argued that sexual orientation anti-discrimination laws are valid. That proposition, by itself, does not accomplish what the City must show to undermine Plaintiffs' Free Exercise claim.

IV.

Plaintiffs are entitled to a preliminary injunction. The City of East Lansing must allow Plaintiffs to participate in the East Lansing Farmer's Market for the remainder of the 2017 season. On the evidence before this Court, the City amended its Vendor Guidelines and then used the changes to deny Country Mill's vendor application. There exists a substantial likelihood that Plaintiffs will be able to prevail on the merits of their claims for speech retaliation and for free exercise of religion.

Accordingly, Plaintiffs' motion for a preliminary injunction (ECF No. 7) is **GRANTED.**

## ORDER FOR A PRELIMINARY INJUNCTION

The Court concludes Plaintiffs Stephen Tennes and Country Mill Farms are entitled to a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure.

1. Plaintiffs have established a substantial likelihood that the City of East Lansing's decision to deny Country Mill's vendor application for the 2017 East Lansing Farmer's Market violates their freedom from speech retaliation and their free exercise of religion.

2. The City of East Lansing, as well as its political subdivisions, including the Farmer's Market Planning Committee, must accept Country Mill Farms's Vendor Application for the 2017 Farmer's Market season, which runs through the last weekend in October.

3. The City of East Lansing must grant Country Mill Farms any necessary license and allow Country Mill Farms to sell its goods at the East Lansing Farmer's Market for the remainder of the 2017 season.  Country Mill Farms must agree to abide by the Vendor Guidelines, except as noted in the last sentence of this Order.  The City of East Lansing may enforce the Vendor Guidelines against Country Mill Farms, with the exception that Country Mill Farms may not be found in violation of the Guidelines for declining to host same-sex wedding ceremonies at the Country Mill Farms.

IT IS SO ORDERED.

Date:  September 15, 2017                     /s/ Paul L. Maloney
                                                                                 Paul L. Maloney
                                                                                 United States District Judge