# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**Country Mill Farms**, **LLC** and
**Stephen Tennes**,

                    Plaintiffs,

        v.

**City of East Lansing**,

                    Defendant.

**Case No. 1:17-cv-00487-PLM-RSK**

Honorable Paul L. Maloney

**Memorandum in Support of
Plaintiffs Country Mill Farms, LLC,
and Stephen Tennes's Motion for
Partial Directed Verdict**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ............................................................................................. 1

BACKGROUND ............................................................................................... 1

I.     The Supreme Court's decision in *Fulton v. City of Philadelphia* ........................ 1

II.    The undisputed trial evidence regarding East Lansing's discretion .................. 3

ARGUMENT .................................................................................................... 5

I.     The City of East Lansing's decision to exclude Country Mill from the Farmer's Market is unconstitutional for the same reasons as the City of Philadelphia's exclusion of CSS from the foster program. ................................... 5

II.    The City's responses to Country Mill's arguments all fail. ................................. 6

CONCLUSION ................................................................................................. 10

## TABLE OF AUTHORITIES

*Cases*

*Braunfeld v. Brown*,
   366 U.S. 599 (1961) ............................................................................. 7

*Burwell v. Hobby Lobby Stores, Inc.*,
   573 U.S. 682 (2014) ................................................................... 6, 7, 8

*Church of the Lukumi Babalu Aye, Inc. v. Hialeah*,
   508 U.S. 520 (1993) ............................................................................. 6

*Employment Division, Department of Human Resources of Oregon v. Smith*,
   494 U.S. 872 (1981) ................................................................... 1, 2, 7

*Fulton v. City of Philadelphia*,
   141 S. Ct. 1868 (2021) ........................................................... 1, 2, 3, 5

*Gonzales v. O Centro Espirita Beneficente União do Vegetal*,
   546 U.S. 418 (2006) ............................................................................. 2

*Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC*,
   565 U.S. 171 (2012) ............................................................................. 6

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission*,
   138 S. Ct. 1719 (2018) ....................................................................... 8

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
   141 S. Ct. 63 (2020) ........................................................................... 9

*Tandon v. Newsom*,
   141 S. Ct. 1294 (2021) ................................................................... 9, 10

*United States v. Lee*,
   455 U.S. 252 (1982) ............................................................................. 7

*Other Authorities*

Archdiocese of Philadelphia – Office for Financial Services, *Financial Statements
   and Report of Independent Certified Public Accountants* (Nov. 13, 2020),
   https://bit.ly/3xpm9ve. ..................................................................... 6

## INTRODUCTION

Consistent with the Court's order from the bench on July 28, 2021 (the final day of trial in this matter), Steve Tennes and Country Mill Farms file this supplemental brief in support of their oral motion for partial directed verdict. As explained in the oral motion and detailed below, the outcome of this case is controlled by *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021). Indeed, as the Court observed while hearing the oral motion, if you substitute "Country Mill" and "the City of East Lansing" everywhere that "Catholic Social Services" and "the City of Philadelphia" appear in the *Fulton* opinion, it is difficult to see any difference between the two cases. Accordingly, the Court should grant Plaintiffs a directed verdict on the individualized-assessments portion of their Free Exercise Claim in Count IV, then resolve Plaintiffs' remaining claims through findings of fact and conclusions of law.

## BACKGROUND

### I.    The Supreme Court's decision in *Fulton v. City of Philadelphia*

In *Fulton*, the City of Philadelphia terminated a contract with Catholic Social Services (CSS) because CSS would not certify same-sex couples for foster place-ments or place foster children with same-sex couples. Like the City of East Lansing, Philadelphia said that policy was prohibited by its agreement with CSS, so it terminated CSS's license. The Court observed that it was "plain that the city's actions have burdened CSS's religious exercise." 141 S. Ct. at 1876.

Also like the City of East Lansing, Philadelphia argued that its agreement was neutral and generally applicable under *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872 (1981). But the Supreme Court disagreed, holding that the contract was "not generally applicable as required by *Smith*" because it allowed the City's program director to grant an "exception."

*Fulton,* 141 S. Ct. at 1878. That one clause, said the Court, was a "system of individual exemptions" or assessments. *Id.*

Philadelphia protested that it had never exercised that "exception" clause. But the Supreme Court declared that "[t]he creation of a . . . mechanism for granting exceptions renders a policy not generally applicable, regardless of whether any exceptions have been given." *Fulton,* 141 S. Ct. at 1879. A discretionary provision "invites the government to decide which reasons for *not* complying with the policy are worthy of solicitude." *Id.* (emphasis added) (citing *Smith,* 494 U.S. at 884).

The Supreme Court also rejected Philadelphia's plea for deference because the case arose in a contracting context. "No matter the level of deference," the Court explained, "the inclusion of a formal system of entirely discretionary exceptions . . . renders the contractual non-discrimination requirement not generally applicable." *Fulton,* 141 S. Ct. at 1878. And because Philadelphia's agreement both imposed a burden on CSS's religious exercise and did not qualify as generally applicable, Philadelphia's exclusionary policy had to survive strict scrutiny, requiring proof of government "interests of the highest order" and proof that the policy solution "is narrowly tailored to achieve those interests." *Id.* at 1881.

Philadelphia insisted that it had a compelling interest in preventing discrimination based on sexual orientation. But the Supreme Court said that objective was stated at too high a level of generality. *Fulton,* 141 S. Ct. at 1881. Under *Gonzales v. O Centro Espirita Beneficente União do Vegetal*, 546 U.S. 418, 430–32 (2006), the Court instead asked whether Philadelphia had such an interest in denying an exception *to CSS* in particular. *Fulton,* 141 S. Ct. at 1882. The Court held, as a matter of law, that the City lacked a compelling interest in forcing CSS to certify same-sex couples for foster placement *because of Philadelphia's discretion*: the "creation of a system of exceptions under the contract undermines the City's contention that its non-discrimination policies can brook no departures." *Id.* In

2

other words, the "City offer[ed] no compelling reason why it has a particular interest in denying an exception to CSS while making them available to others." *Id.*

## II.    The undisputed trial evidence regarding East Lansing's discretion

The City of East Lansing's vendor requirements—which appear at Exhibit 24 (2017 version) and 58 (2021 version)—create a system of individualized assessments that far exceeds Philadelphia's discretion. Section 6 gives the City discretion to consider *14 different factors* pertaining to how a vendor "will embody the spirit of the market," whatever that means. Vendor Requirements § 6. These factors include the building of customer relationships, compliance with the City's Human Rights Ordinance, and "Having fun!" *Id.* City Manager Lahanas initially testified that the Human Rights Ordinance was mandatory for vendors. But on cross-examination, he was forced to admit that these are all just "factors," and none of the factors are mandatory, just "something to consider." What's more, City Manager Lahanas confirmed, the City has complete discretion in how to *weigh* the 14 factors against each other. *See* Daily Trial Transcript, Day 2 at 290:20–292:12, attached as Exhibit B. And that testimony is in accord with the plain language of the contract document itself, which places no limitations on how the City exercises its discretion.

The City's Vendor License Agreement, Exhibit 4, confirms the City of East Lansing's discretion in § 12, regarding revocation. That provision says that "any license *may* be revoked by the City for failure to comply with the guidelines." License Agreement § 12 (emphasis added). This is classic government discretion.

The City's discretion broadens even more under the Human Rights Ordinance (available at Exhibit 24 (2017), and online at https://bit.ly/3ypwLf3). The Ordinance contains abundant exemptions, including:

- § 22-33(d) (employment of a close family member);
- § 22-33(e) (bona fide occupational qualifications, which former Mayor Meadows confirmed can be given "at the option of the Commission");

3

- § 22-33(g) (City's discretion to declare when a contractor has breached a City contract by violating the Ordinance in its employment);

- § 22-34(c) (housing discrimination involving certain leases);

- § 22-37 (private clubs or other establishments that are not open to the public are exempt from the Ordinance in its *entirety*);

- §22-38(d) (Commission has discretion to investigate alleged violations);

- § 22-38(g) (Commission discretion to refer a violator for further action);

- § 22-38(h) (all penalties under the Ordinance are optional, including whether to impose fines or imprisonment under § 22-38(h)(11));

- § 22-40(b) (City has discretion whether to consider an Ordinance violation to be a material breach of contract); and

- § 22-40(c) (eight-item list of secular exemptions for City contractors who do not want to provide domestic partner benefits).

Any one of these exemptions would be enough under *Fulton*. But the exemption for private clubs and other establishments not open to the public is particularly striking. Mayor Meadows testified that a "private club" might include the Kiwanis or the Rotary Club. And he testified that "other establishments" might include the VFW. *See* Ex. B at 355:1–356:9. So if any one of these (or other, similarly qualified) organizations hosted weddings at a venue but respectfully declined to host same-sex weddings, the organizations and their venues would be *automatically* exempt under the City's own policies.

The City's Farmer's Market Manager at the time, Ms. Majano, put a bow on all this. She testified that the City has discretion to include or exclude a vendor based on how "grumpy" they are. And when it came to the vendor improperly selling non-Michigan cheese, or the vendor who drove his vehicle into another vendor's stand, likely due to his intoxication, Ms. Majano agreed the City "looked at it on a

case-by-case basis" and did what they "thought was fair." *See* Daily Trial Transcript, Day 1 at 206:14–25, attached as Exhibit A.

**ARGUMENT**

**I.   The City of East Lansing's decision to exclude Country Mill from the Farmer's Market is unconstitutional for the same reasons as the City of Philadelphia's exclusion of CSS from the foster program.**

After *Fulton*, resolving Country Mill's Free Exercise Claim based on individualized assessments (Count IV) is straightforward. Under *Fulton*, it does not matter *why* the City of East Lansing declined to allow Country Mill to return to the Farmer's Market after learning about the Tennes' Catholic marriage beliefs. It doesn't even matter *if* the City of East Lansing ever granted an exemption to anyone else—though it clearly has, both expressly (private clubs or other establishments not open to the public), and in practice (the non-Michigan cheese vendor and the intoxicated vendor). The legal problem is that East Lansing's policy "invites the government to decide which reasons for not complying with the policy are worthy of solicitude." *Fulton*, 141 S. Ct. at 1879.

From there, the analysis is easy. Like Philadelphia, East Lansing lacks a compelling reason to force *the Tennes* to violate their religious beliefs on their family farm more than 20 miles outside East Lansing's city limits. Like the City of Philadelphia, East Lansing's unfettered discretion and individualized assessments and exceptions "undermines the City's contention that its non-discrimination policies can brook no departures." *Fulton,* 141 S. Ct. at 1882.

In sum, just as in *Fulton*, East Lansing has (1) burdened Country Mill's religious exercise, (2) reserved for itself discretion, assessments, and exceptions, and (3) has proffered no compelling reason why it has denied an exception and failed to exercise any discretion for Country Mill. So, like the Supreme Court in *Fulton*, this Court should hold that the City of East Lansing's actions toward Country Mill fail

5

strict scrutiny. Like Philadelphia, East Lansing's system of exemptions undermines its contention that its non-discrimination policies can brook no departures.

## II.   The City's responses to Country Mill's arguments all fail.

At the hearing on Plaintiffs' oral motion for directed verdict, the City of East Lansing advanced several reasons in opposition. But these objections fail:

1. The City first represented that in *Fulton*, Catholic Social Services was just an arm of the Archdiocese of Philadelphia and therefore was a "church." But as the Archdiocese of Philadelphia represents on its audited financial statements, CSS (like Catholic Charities West Michigan) is operated separately and distinctly from the Archdiocese itself. Archdiocese of Philadelphia – Office for Financial Services, *Financial Statements and Report of Independent Certified Public Accountants* 10 (Nov. 13, 2020), https://bit.ly/3xpm9ve. Indeed, Catholic Charities of the Archdiocese of Philadelphia, d/b/a Catholic Social Services, is an independently incorporated non-profit business entity in Pennsylvania.[1]

2. In any event, for-profit businesses enjoy Free Exercise rights, too. In *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014), the Supreme Court granted free-exercise protection to Hobby Lobby, a for-profit business. And while the Court started with the definition of "person" under the Religious Freedom Restoration Act, the majority then explained why recognizing corporate free-exercise rights is consistent with that Court's First Amendment precedents, including *O Centro* (discussed above), *Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC*, 565 U.S. 171 (2012), and *Church of the Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993). What's more, explained the Court, a plaintiff can exercise religion even while seeking profits, as in *Braunfeld v. Brown*, 366 U.S.

[1] Commonwealth of Pennsylvania, Department of State, https://www.corporations.pa.gov/search/corpsearch (search for entity number 59070 for Catholic Charities, and entity number 2121323 for the Catholic Social Services dba).

599 (1961) (plurality), a case involving "five Orthodox Jewish merchants who ran small retail businesses" who challenged a "Sunday closing law as a violation of the Free Exercise Clause." *Hobby Lobby*, 573 U.S. at 705.

Why would this be so? Because the purpose of the corporate "fiction is to provide protection *for human beings*." *Hobby Lobby*, 573 U.S. at 706. "A corporation," said the Court, "is simply a form of organization used by human beings to achieve desired ends." *Id.* So, "[w]hen rights, whether constitutional or statutory, are extended to corporations, the purpose is to protect the rights of these people." *Id.* at 706–07. These include, for example, Fourth Amendment rights of privacy, and protections against government seizure of property without just compensation. *Id.* at 707. Accordingly, when considering a for-profit corporation like Country Mill, "[f]urthering [its] religious freedom also 'furthers individual religious freedom,'" i.e., that of the Tennes family. *Id.* at 709.

Focusing on the Jewish merchants in *Braunfeld*, the Court clarified that "[b]usiness practices that are compelled or limited by the tenets of a religious doctrine fall comfortably within [the] definition" of "exercise of religion." *Hobby Lobby*, 573 U.S. at 710 (relying on *Smith*, 494 US at 877, and *United States v. Lee*, 455 U.S. 252, 257 (1982)). "If, as *Braunfeld* recognized, a sole proprietorship that seeks to make a profit may assert a free-exercise claim," *id.*, why can't Country Mill and Steve Tennes do the same?

In answering that question, the Supreme Court rejected the City of East Lansing's position that the purpose of businesses is just to make money. "[M]odern corporate law," said the Court, "does not require for-profit corporations to pursue profit at the expense of everything else, and many do not do so." *Hobby Lobby*, 573 U.S. at 711–12. Indeed, many for-profit corporations "further humanitarian and other altruistic objectives," such as preserving the environment, or fair wages and benefits for foreign workers. *Id.* at 712. "If for-profit corporations may pursue such

worthy objectives," concluded the Court, "there is no apparent reason why they may not further religious objectives as well." *Id.* In sum, East Lansing cannot violate the Tennes family's right to live their faith while operating their business.

The City of East Lansing's response to all this in open Court was to note that the *Lukumi* case involved a church. But the Supreme Court applied its *Lukumi* precedent in ruling in *favor* of master-cake baker and small-business owner Jack Phillips in *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission*, 138 S. Ct. 1719 (2018). In sum, the Supreme Court has consistently rejected the City's proposition that owners of for-profit companies have no free-exercise protections in the way they live their faith through their businesses.

3. Next, the City tried to distinguish *Fulton* because CSS views foster-care as part of its religious mission. But the evidence here was replete at trial that the Tennes, too, view their business as having a religious mission. From the Country Mill mission statement to its articles of incorporation to the way Steve and Bridget live out their faith in all their work, the whole enterprise exists to give glory to God.

What's more, as the Court commented on this very point, the issue here "is marriages, not apples." And the Tennes' Catholic faith is what motivates them to host weddings on their family farm in the first place. They are not shy about that fact. As they explain on their wedding website, "Our mission of an Orchard Wedding is to *glorify God* by hosting affordable wedding celebrations that create family memories."[2]

In any event, the City is trying to draw a distinction that makes no legal difference. For example, running small retail businesses is not inherently "religious exercise," yet the Court recognized the free-exercise rights of the Jewish merchants who were adversely affected by Sunday closing laws. Nor is it inherently "religious

---

[2] Orchard Wedding.com, https://www.orchardreception.com/ (emphasis added)

exercise" for Jack Philips to create and sell art made of cake and other edibles. But the Supreme Court protected Jack's free-exercise rights because he lived out his faith in the way he operated his business. The same is true of the Tenneses.

4. Finally, the City suggested that it has no exemptions to its Human Rights Ordinance, generally or as applied to Farmer's Market vendors. But that argument is foreclosed by the Vendor Guidelines and the Ordinance itself. As the four corners of both documents make clear, the Ordinance and the Guidelines are chock full of outright exemptions and discretionary exceptions, all of which require the type of individualized assessments that *Fulton* condemns. These documents give City officials plenty of running room to exempt Country Mill. And in the end, *Fulton* makes clear that the question presented is not whether Country Mill is eligible for or should be given an exemption. The question is whether the City exempts or has the discretion to except anyone else, even if that power has never been exercised. And the answer to that question is indisputably "yes."

*Fulton* is limited in that it does not apply to laws that are truly generally applicable. For example, if there is a zoning law that requires buildings to be set back 20 feet from a property line, no exceptions, *Fulton* is not implicated. But whenever the government retains exemptions, exceptions, or discretion, then the government must satisfy strict scrutiny if it declines to exempt a religious organization or religiously motivated conduct, as the Supreme Court's Covid cases explain at length. *E.g.*, *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021) (per curiam) (citing *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67–68, (2020) (per curiam)) ("Government regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise."). And "whether two activities are comparable for purposes of the Free

Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue." *Tandon,* 141 S. Ct. at 1298.

Here, the City of East Lansing's asserted interest is preventing discrimination based on sexual orientation. Taking the City at its word, then every exception, exemption, and exercise of discretion involving the Human Rights Ordinance implicates the exact same interest. As in *Fulton,* strict scrutiny applies to the City's decision to exclude Country Mill from the Farmer's Market. And as in *Fulton,* the City's exclusion cannot satisfy strict scrutiny because East Lansing's system of exemptions and individual assessments undermines any contention that its non-discrimination policies brook no departures.

## CONCLUSION

Plaintiffs ask that the Court grant them a direct verdict on the individualized-assessments portion of their Free Exercise Claim in Count IV.

Respectfully submitted this 6th day of August, 2021.

By:  s/ Katherine L. Anderson

Katherine L. Anderson (AZ Bar No. 033104)*
Ryan J. Tucker (AZ Bar No. 034382)*
Jonathan A. Scruggs (AZ Bar No. 030505)*
**Alliance Defending Freedom**
15100 N. 90th Street
Scottsdale, AZ  85260
Telephone: (480) 444-0020
Fax: (480) 444-0028
kanderson@adflegal.org
rtucker@adflegal.org
jscruggs@adflegal.org

James R. Wierenga (P48946)
Jeshua T. Lauka (P71958)
**David & Wierenga, P.C.**
99 Monroe Avenue, N.W.
Suite 1210
Grand Rapids, MI 49503
Telephone: (616) 454–3883
Fax: (616) 454–3988
jim@dwlawpc.com
jeshua@dwlawpc.com

David A. Cortman (GA Bar No. 188810)*
**Alliance Defending Freedom**
1000 Hurricane Shoals Rd. NE
Suite D-1100
Lawrenceville, GA 30043
Telephone: (770) 339-0774
Fax: (770) 339-6744
dcortman@adflegal.org

Rachel Csutoros (MA Bar No. 706225)*
Hailey Vrdolyak (IL Bar No. 6333515)*
**Alliance Defending Freedom**
440 First Street NW, Suite 600
Washington, D.C. 20001
Telephone: (202) 393-8690
Fax: (202) 347-3622
rcsutoros@adflegal.org
hvrdolyak@adflegal.org

John Bursch (P57679)
**Bursch Law PLLC**
9339 Cherry Valley Avenue, SE
Suite 78
Caledonia, MI 49316
Telephone:  (616) 450-4235
jbursch@burschlaw.com

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2021, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following counsel of record who are registered users of the ECF system:

Michael S. Bogren
Plunkett Cooney
333 Bridge St. NW, Ste. 530
Grand Rapids, MI 49504
269-226-8822
mbogren@plunkettcooney.com

Audrey J. Forbush
Plunkett Cooney
Plaza One Financial Ct.
111 E. Court St., Ste. 1B
Flint, MI 48502
269-226-8822
aforbush@plunkettcooney.com

Thomas M. Yeadon
McGinty Hitch Housefield Person
Yeadon & Anderson PC
601 Abbott Rd.
P.O. Box 2502
East Lansing, MI 48826
517-351-0280
tomyeadon@mcgintylaw.com

By: s/ Katherine L. Anderson
Katherine L. Anderson (AZ Bar No. 033104)*
**Alliance Defending Freedom**
15100 N. 90th Street
Scottsdale, Arizona 85260
Telephone: (480) 444-0020
Fax: (480) 444-0028
kanderson@adflegal.org

ATTORNEY FOR PLAINTIFFS

12