UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COUNTRY MILL FARMS, LLC and )
STEPHEN TENNES, )
                 Plaintiffs, )
                 ) No. 1:17-cv-487
-v- )
                 ) Honorable Paul L. Maloney
CITY OF EAST LANSING, )
                 Defendant. )
                 )

## OPINION AND ORDER GRANTING PLAINTIFF'S RULE 52(c) MOTION

The City of East Lansing requires vendors for its Farmer's Market to comply with the City's public policy against discrimination. Country Mill Farms offers to rent a portion of its property for weddings. Country Mill Farms, however, will not rent the property for same-sex weddings. Because of this general business practice, the City denied Country Mills Farm's vendor application for the 2017 East Lansing Farmers Market. Country Mill Farms and its owner, Stephen Tennes, sued.

The Court held a bench trial and at the close of their proofs Plaintiffs moved, under Rule 52(c), for judgment on partial findings on Count IV, their claim for a violation of the Free Exercise Clause based on individualized assessments. Following the holding in *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021), the Court will grant Plaintiffs' motion.

I.

Rule 52 of the Federal Rules of Civil Procedures applies to motions made during bench trials. *See* Fed. R. Civ. P. 52(a)(1) and (c); *Stop Illinois Health Care Fraud, LLC v. Sayeed*, 957 F.3d 743, 748 (7th Cir. 2020) ("But Rule 50(a) applies to jury trials, and Rule

52(c) applies to bench trials."); *Spartan Concrete Prods., LLC v. Argos USVI, Corp.*, 929 F.3d 107, 111 n.1 (3d Cir. 2019) ("Rule 52 governs motions for judgment made during a bench trial."). Rule 52(c) permits a court to find against a party on an issue after that party has been fully heard on the issue. *Zell v. Klingelhafer*, 751 F. App'x 641, 647 (6th Cir. 2018). Rule 52(a) requires the district court to "find facts specifically" and "state its conclusions of law separately." Fed. R. Civ. P. 52(a). For Rule 52(c) motions, the district "court can weigh evidence, determine witness credibility, and make factual findings on its way to legal conclusions." *Sayeed*, 957 F.3d at 748. For Rule 52(c) motions, a district court "applies the same standard of proof and weighs the evidence as it would at the conclusion of the trial. Accordingly, the court does not view the evidence through a particular lens or draw inferences favorable to either party." *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 272 (3d Cir. 2010) (internal citations omitted).

## II.

Following its last witness, Plaintiffs indicated that they intended to present an oral motion for a directed verdict (ECF No. 147 Hrg. Trans. II at 433 PageID.4820). Defendant rested without calling any witnesses (*id.*). Relying on *Fulton*, Plaintiffs moved for judgment on partial findings, a Rule 52(c) motion. Both parties submitted post-trial briefs on the motion (ECF No. 134 Pl. and ECF No. 135 Def.). The Court begins with a summary of *Fulton*, first the facts and then the legal analysis.

A.

The Supreme Court began by providing some context for the dispute. The Catholic Church had been actively serving the needy children of Philadelphia for more than 200 years. *Fulton*, 141 S. Ct. at 1874. The Church established the Catholic Children's Bureau in Philadelphia in the early 1900s. *Id.* at 1875. Catholic Social Services took over and now continues the mission. *Id.* The City of Philadelphia's foster care system functions as a cooperative venture using private foster care agencies like Catholic Social Services (CSS). *Id.* The City's Department of Human Services uses standard annual contracts with these private foster agencies which place foster children with foster families. *Id.* Under Pennsylvania law, these private foster agencies (Foster Family Care Agency or FFCA) may certify foster care families and, when certified or approved, a foster child may be placed with the foster family. *Id.* When the City seeks to place a child with a foster family, the City makes a referral to the FFCAs which then identify what certified families are available. *Id.*

CSS has religious views that affects its work as an FFCA. CSS believes marriage is a sacred bond between a man and a woman. *Fulton*, 141 S. Ct. at 1875. CSS interprets the certification of a foster family as an endorsement of that relationship and, therefore, will not certify unmarried couples and will not certify married same-sex couples. *Id.* CSS does not object to certifying gay or lesbian individuals as single foster parents. *Id.*

In 2018, CSS's beliefs and its role in the City's foster care system became the subject of a newspaper article and then an investigation. *Fulton*, 141 S. Ct. at 1875. The City subsequently informed CSS that it would no longer refer children to CSS. *Id.* The City

explained that CSS's refusal to certify same-sex couples violated a non-discrimination clause in the FFCA contract and also violated a non-discrimination ordinance. *Id.*

CSS and several foster care parents sued alleging, among other things, that the City's policies violated the Free Exercise Clause. In Count III of the complaint, Plaintiffs alleged the City's policy violated the Free Exercise Clause because the policy was not generally applicable (ECF No. 135-1 Fulton Compl. PageID.3521-22). In Count IV of the complaint, Plaintiffs alleged the City's policy violated the Free Exercise Clause because the policy contained system of individualized assessments (*Id.* PageID.3522-23).

### B.

With this context, the Court considered whether the City violated CSS's right under the First Amendment.

Our Constitution states that "Congress shall make no law ... prohibiting the free exercise" of religion. U.S. Const. amend 1. The Court began applying the facts to the law by finding that "it is plain that the City's actions have burdened CSS's religious exercise by putting it to the choice of curtailing its mission or approving relationships inconsistent with its beliefs." *Fulton*, 141 S. Ct. at 1876. The Court explained that under prevailing precedent, *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872 (1990), "laws that incidentally burden religion are ordinarily not subject to strict scrutiny under the Free Exercise Clause so long as they are neutral and generally applicable. *Id.* The Court further explained that "[a] law is not generally applicable if it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exceptions." *Id.* at 1877 (cleaned up; citation omitted).

The Court then found that the City's policies violated the requirement to be generally applicable. *Fulton*, 141 S. Ct. at 1877. The City's policy contained a mechanism for individualized exceptions. *Id.* The contract granted the Commissioner "sole discretion" to grant an exception. *Id.* at 1878. And, the existence of the mechanism for granting exception, not its exercise, rendered the practice not generally applicable. *Id.* at 1879.

Finally, the Court found that the City had not demonstrated a compelling interest that was narrowly tailored. When a policy contains individualized exemptions, the governmental entity "may not refuse to extend that system to cases of religious hardship without compelling reason." *Fulton*, 141 S. Ct. at 1877 (cleaned up; citation omitted). The Court instructed that a narrowly-tailored inquiry must focus "on the asserted harm of granting specific exemptions to particular religious claimants." *Id.* at 1881 (quoting *Gonzales v. O Centro Espirita Beneficente União do Vegetal*, 546 U.S. 418, 431 (2006)). "The question, then, is not whether the City has an interest in enforcing its non-discrimination policies generally, but whether it has such an interest in denying an exception to CSS." *Id.*

With this understanding of the dispute in *Fulton* between Catholic Social Services and the City of Philadelphia, the Court turns to the dispute between Plaintiffs and the City of East Lansing.

### III.

### A. Findings of Fact

The facts in this lawsuit are largely not in dispute. Plaintiff called eight witnesses. Defendant did not call any witnesses. The parties dispute the relevant law and the application of facts to the law.

Plaintiff Steve Tennes operates his family farm, Country Mill Farms (CMF), in Eaton County selling a wide variety of fruits and vegetables. (ECF No. 146 Hrg. Trans. I at 45 PageID.4432 Tennes). He is the sole member of CMF and he is also the manager (*id.* at 37 PageID.4424). Tennes has adopted a mission statement for CMF: "glorify God by facilitating family fun on the farm and feeding families" (*id.* at 44 PageID.44311). That mission governs Tennes' business and he includes a mission statement in his corporate documents (*id.*). Tennes stopped running haunted houses, something his father started, because the practice was not in line with his faith (*id.* at 52 PageID.4439). He has declined to host bachelor and bachelorette parties for the same reason (*id.*)

Tennes offers a portion of CMF as a wedding venue, as often as forty-four times a year (Hrg. Trans. I at 54 PageID.4442). Tennes considers the celebration of weddings at CMF as "a calling from God for us to serve" (*id.* at 55 PageID.4442). Tennes' religious belief is that a marriage is between a man and a woman (*id.* at 56 PageID.4443). Because of this sincerely held religious belief, Tennes will not rent the venue for same-sex weddings (*id.* at 115 PageID.4502).

For a number of years, through 2016, the East Lansing Farmer's Market (ELFM) invited CMF to be a vendor (Hrg. Trans. I at 73 PageID.4460 Tennes). The City of East Lansing runs the market (*id.* at 135 PageID.4522 Majano). ELFM has a limited amount of space for vendors and most of the spots are filled by invitation (*id.* at 75 PageID.4462 Tennes). All vendors must abide by certain guidelines, which are published by ELFM (*id.* at 76 PageID.4463; Ex. 2 - 2016 Vendor Guidelines). Each year a planning committee

decides which vendors to invite based on the guidelines and past experience with the vendor (*id.* at 76-77 PageID.4463-64 Tennes; at 141-42 PageID.4528-29 Majano).

In August 2016, CMF received an inquiry on its social media website concerning its position on LGBT groups (Ex. 5). CMF clarified that because of sincerely held religious beliefs, "we do not participate in the celebration of a same sex union. We have and will continue to respectfully direct wedding inquiries to another mid-Michigan orchard that has more experience hosting same sex weddings" (*id.*). The inquiry and clarification were brought to the attention of the City of East Lansing (Hrg. Trans. I at 156 PageID.4543 Majano). In late August, the City reached out to CMF and, because of the social media message concerning same-sex weddings, asked it not to attend the ELFM the following weekend (*id.* at 66 PageID.4453 Tennes). A few days later, CMF announced that it would no longer book future wedding ceremonies (*id.* at 67 PageID.4454 and at 70 PageID.4457; Ex. 6). CMF attended ELFM that weekend and for the rest of the 2016 season (*id.* at 70-71 PageID.4457-58).

In mid-December 2016, CMF made the decision that it would resume booking weddings and reserved the right to deny a request for services that would require Tennes to violate his sincerely held religious beliefs (Hrg. Trans. I at 71-72 PageID.4458-59 Tennes; Ex. 20). The City became aware of the December 2016 announcement (*id.* at 158 PageID.4545 Majano). Soon thereafter, the City began amending the vendor guidelines for ELFM (*id.* at 160 PageID.4547). CMF's December 2016 announcement provided the catalyst for the changes (*id.* at 161 PageID.4548). The City added subsection 6(m) (*id.*; at 219-20 PageID.4606-07 McCaffrey). The new subsection states that vendors should comply

7

with the City of East Lansing's civil rights ordinances and the public policy against discrimination (Ex. 24).

The planning committee did not invite CMF to be a vendor for the 2017 ELFM (Hrg. Trans. I at 78 PageID.4465 Tennes). The City did not invite CMF because it decided to rent its venue for weddings but would not host same sex weddings (Hrg. Trans. II at 287 PageID.4674 Lahanas). When it did not receive an invitation, CMF applied to be a vendor for the 2017 ELFM (Hrg. Trans. I at 78 PageID.4465 Tennes). The City denied the application (*id.* at 85 PageID.4472; Ex. 28). In a letter, the City explained that CMF's "general business practices do not comply with East Lansing's Civil Rights ordinances and public policy against discrimination as set forth in Chapter 22 of the City Code and outlined in the 2017 Market Vendor Guidelines" (Ex. 28). In a subsequent letter, the City clarified that CMF's December 12 social media announcement about same-sex weddings constituted a violation of the ordinance and ELFM vendor guidelines (Ex. 30; Hrg. Trans. I at 225 PageID.4612 McCaffrey).

B. Conclusions of Law

1. The Free Exercise Clause of the First Amendment to the United States Constitution applies to actions of Defendant City of Lansing.

   a. The Free Exercise Clause applies to the fifty states through the Fourteenth Amendment. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993).

      b. Section 1983 authorizes lawsuits against "every person" who, acting under color of law of any State, causes the deprivation of rights secured by our Constitution. 42 U.S.C. § 1983.

      c. Municipalities, like Defendant City of East Lansing, may be sued as "person" under § 1983. *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).

  2. The Free Exercise Clause restricts Defendant's ability to burden Plaintiffs' free exercise of religion.

      a. Defendant may enforce laws that have an incidental burden on the exercise of religion if the law is neutral and generally applicable. *Holt v. Hobbs*, 574 U.S. 352, 356-57 (2015) (citing *Smith*, 494 U.S. at 878-82); *City of Hialeah*, 508 U.S. at 531 (citing *Smith*). Under the *City of Hialeah* line of cases, laws that force defendants to choose "between their religious beliefs and receiving a government benefit" constitute a burden the freedom protected by the Free Exercise Clause. *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 464 (2017) (quoting *Locke v. Davey*, 540 U.S. 712, 720-21 (2004)). Courts apply rational basis review to neutral and generally applicable laws that burden the free exercise of religion. *American Atheists, Inc. v. City of Detroit Downtown Dev. Auth.*, 576 F.3d 278, 302 (6th Cir. 2009) (citing *Smith*, 494 U.S. at 877-79).

      b. "A law is not generally applicable if it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions." *Fulton*, 141 S. Ct. at 1877 (cleaned up; quoting *Smith*, 494 U.S. at 884). "[W]here a state extends discretionary exemptions to a policy, it must grant exemptions for

cases of 'religious hardship' or present compelling reasons not to do so." *Dahl v. Bd. of Trustees of Western Michigan Univ.*, 15 F.4th 728, 733 (6th Cir. 2021) (per curiam). It is the mechanism for the exercise of discretion in granting exemptions, not the existence of objectively defined exemptions, that undermines the general applicability of the law. *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 288-89 (2d Cir. 2021) (collecting cases).

      c. "A law also lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Fulton*, 141 S. Ct. at 1877 (citing *City of Hialeah*, 508 U.S. at 542-546). Under the Free Exercise Clause, the government "cannot in a selective manner impose burdens only on conduct motivated by religious belief" while failing "to prohibit nonreligious conduct" that undermines the interests protected by the law. *City of Hialeah*, 508 U.S. at 543.

      d. "A law burdening religious practice that is not neutral or not of general applicability" is subject to strict scrutiny review. *City of Hialeah*, 508 U.S. at 546. Laws that burden the free exercise of religion and are not neutral and generally applicable "must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest." *Id.* at 531-32. The government bears the burden of satisfying strict scrutiny review. *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2426 (2022). To meet the strict scrutiny analysis, the government cannot rely on the general interest advanced through enforcement of the law; rather, the government must show its compelling interest in the denial of the exception. *Fulton*, 141 S. Ct. at 1881.

C. Application of the Facts to the Law

1. Defendant's 2017 decision to deny Plaintiffs' application substantially burdened Plaintiffs' free exercise of religion.

Defendant relied in the revised 2017 vendor guidelines to deny CMF's application to participate in the ELFM. The stated reason for the denial was the Plaintiffs' decision not to rent the venue for same-sex weddings. Plaintiffs' decision was motivated by religious beliefs. Plaintiffs were forced to choose between their religious beliefs and a government benefit for which CMF was eligible.

2. Defendant's policies are not generally applicable.

a. The 2017 Vendor Guidelines allow for the exercise of discretion in at least two ways, discretion that undermines the general applicability of the Guidelines. First, the Guidelines allow for discretion when selecting vendors for invitation and for approving annual vendor applications. Paragraph 4 distinguishes between annual vendors and invited vendors (Ex. 24 ¶¶ 4a and 4d). To be considered for an invitation by the Planning Committee, a vendor must have "consistently adhered to the ELFM Vendor Guidelines and embodied the spirit of the market" (*id.* ¶ 4d). Paragraph 6 sets forth factors a vendor must exhibit to "embody the spirit of the market" (*Id.* ¶ 6).

> Multiple factors that affect the success of every vendor are considered:
> a. Merit high quality produce and presentation
> b. Convincing amount of produce
> c. Attending the market each and every week
> d. Offering a diversity of fresh produce
> e. Creating an inviting atmosphere for customers
> f. Displaying products in a thoughtful and creative way (i.e., use of table clothes, unique signage, three-dimensional displays)
> g. Pricing products fairly

  h. Being friendly and courteous to, and interacting with customers
  i. Building relationships with customers
  j. Participating in marketing initiatives and special events
  k. Adhering to market guidelines including attendance, parking, safe food handling, signage, etc.
  l. Following the *MDA Guidelines for Providing Safe Food Samples* (Appendix A)
  m. Complying with the City of East Lansing's Civil Rights ordinances and the public policy against discrimination contained in Chapter 22 of the East Lansing City Code while at the ELFM and as a general business practice (Appendix B)
  n. Having fun!

(*Id.*) Subsection (m) allows for the Planning Committee to consider whether the vendor discriminates as part of the vendor's general business practices. During her testimony at trial, Heather Majano, who was the ELFM Market Manager in 2016 and 2017, agreed that the planning committee examines these factors on a case-by-case basis to determine whether to invite or not invite a vendor (Hrg. Trans. I at 145 PageID.4532 Majano). Majano agreed that the planning committee could decide not to invite someone because he or she was grumpy or did not have a colorful display (*id.* at 145-45 PageID.4532-33). George Lahanas, the City Manager, acknowledged that the Guidelines did not include any indication about how to weigh the different factors, including subsection (m)[1] (ECF No. 147 Hrg. Trans II at 282-83 PageID.4469-70 Lahanas). This functionally unfettered discretion means that the Vendor Guidelines are not generally applicable and function as a mechanism for individualized decisions.

---

[1] Lahanas testified that *he* would weigh subsection (m) "as a yes-or-no thing" (Hrg. Trans. II at 282-83 PageID.4469-70).

Second, the Vendor Guidelines give the ELFM market manager discretion to enforce or not enforce the guidelines. Paragraph 15 of the Vendor Guidelines, which sets forth the Market Manager Responsibilities, gives the manager authority to (1) deny or remove vendors from the market, (2) impose disciplinary action, and (3) grant exceptions and accommodations on an individual basis (*Id.* ¶¶ 15j, 15k, and 15l). This enforcement discretion constitutes a "mechanism for individualized exemptions" not functionally different from the policy in *Fulton*. And, the mere existence of the mechanism, not its exercise, "renders a policy not generally applicable." *Fulton*, 141 S. Ct. at 1879.

b. Chapter 22 of the East Lansing City Code, incorporated into the Vendor Guidelines under paragraph 6(m), is not generally applicable because it permits secular conduct through exemptions while prohibiting the same conduct motivated by religious beliefs. The Vendor Guidelines incorporate all of Chapter 22, not just Chapter 22-35, which governs public accommodations. And, the Vendor Guidelines broadly reference the general business practices of the vendor. Chapter 22 contains an objective, nondiscretionary exemption permitting discrimination that would be otherwise prohibited. The entire Chapter prohibiting discrimination does not apply to private clubs or other establishments not open to the public. City of East Lansing, MI., Code §§ 22-37. Chapter 22 also contains provisions that allow for discretionary exemptions. *See, e.g., id.* § 22-33(e) (discretion to grant employment exemption for bona fide occupational qualification); *id.* § 33(g) (for City contract that contain covenants that the contractor will not discriminate against an employee, the City has discretion to declare whether a breach of the covenant is a material breach).

13

Chapter 22 contains a specific nondiscrimination provision concerning spousal benefits. Chapter 22-40 prohibits the City from contracting with contractors that discriminate on the basis of marital status and sexual orientation by failing to provide employment benefits for employees with domestic partners that the contractor would otherwise provide for the spouse of a married couple. City of East Lansing, MI., Code § 22-40(a). Chapter 22-40 contains objective nondiscretionary exemptions and also contains a discretionary exemption. In subsection (b), the City must include a nondiscrimination covenant concerning these benefits in any contract and the City has discretion to declare a breach of the covenant as a material breach. *Id.* § 22-40(b). Subsection (c) contains a list of eight objective, nondiscretionary exemptions, including an exemption for any contract less than $20,000. *Id.* § 22-40(c). The objective, nondiscretionary exemptions and the discretion exemption in § 22-40(b) and (c) makes this portion of the ordinance not generally applicable.

3. The City has not established that the decision to deny CMF a vendor license is narrowly tailored to meet a compelling government interest.

The City relies on the general justification for its nondiscrimination policy, its desire to address discrimination on the basis of sexual orientation (ECF No. 135 Def. Br. at 10 PageID.3493). Defendant's nondiscrimination ordinance, however, contains multiple objective exceptions and discretionary exceptions, all of which would allow the City to do business with an entity that discriminates on the basis of sexual orientation. Defendant has not offered any particular justification for enforcing the nondiscrimination ordinance against Plaintiffs. Nor has Defendant explained why it declines to offer Plaintiffs an exemption from

the nondiscrimination ordinance when the ordinance provides objective and discretionary exemptions to other business entities.

### D. The City's Other Arguments

Defendant argues that Plaintiffs were not engaged in conduct associated with the practice of their religion. The City's arguments against Plaintiffs' Free Exercise claim do not compel a different outcome.

Our Supreme Court has held that the Free Exercise Clause "obviously excludes all 'governmental regulation of religious *beliefs* as such.'" *Smith*, 494 U.S. at 877 (italics in *Smith*; quoting *Sherbert v. Verner*, 374 U.S. 398, 402 (1963)). Under *Smith*, the Free Exercise Clause does not extend to a "generally applicable law that requires (or forbids) the performance of an act that his religious belief forbids (or requires)." *Id.* at 878. The Court explained that the mere "incidental effect of a generally applicable and otherwise valid provision" does not offend the First Amendment. *Id.* Problematic for Defendant, the Vendor Guidelines and the nondiscrimination ordinance are not generally applicable and, therefore, the incidental effect on Plaintiffs' religious beliefs becomes constitutionally suspect.

Furthermore, the Sixth Circuit has applied this incidental effect test to situations that do not involve conduct associated with the practice of religion. In *Dahl*, the Sixth Circuit considered whether to stay enforcement of a preliminary injunction concerning a Free Exercise challenge to a vaccination requirement for student athletes. The student athletes sought religious exemptions to the vaccination requirement. The court explained that

> a policy that forces a person to choose between observing her religious beliefs and receiving a generally available government benefit for which she is otherwise qualified burdens her free exercise rights. The reason is simple: denying a person an equal share of the rights, benefits, and privileges enjoyed by other citizens because of her faith discourages religious activity.

*Id.* at 731. The court declined to issue a stay and found a likelihood of success on the merits of the Free Exercise claim, holding that "[b]y conditioning the privilege of playing sports on plaintiffs' willingness to abandon their sincere religious beliefs, the University burdened their free exercise rights." *Id.* at 732.

2. Defendant contends that *Fulton* does not provide a proper analogy because Catholic Social Services, the plaintiff in *Fulton*, was a religious entity while CMF is for-profit limited liability company.[2] The Free Exercise Clause does not limit its protections to religious entities. And, the Sixth Circuit's holding in *Dahl* forecloses Defendant's argument here. None of the student athletes were religious entities or held a religious office.

### III.

Plaintiffs are entitled to a judgment on partial findings on their Free Exercise claim arising from individualize assessments. The City's decision to exclude Country Mill Farms from the 2017 East Lansing Farmer's Market constituted a burden on Plaintiffs' religious beliefs. Plaintiffs were forced to choose between following their religious beliefs and a government benefit for which they were otherwise qualified. Defendant justified the decision on the Vendor Guidelines and the City's nondiscrimination ordinance. The application of

---

[2] As an attachment to the post-trial brief, Defendant includes the pleading from the *Fulton* litigation in which the plaintiffs allege that "Catholic Social Services is a non-profit religious corporation under the auspices of the Archdiocese of Philadelphia[.]" (ECF No. 135-1 ¶ 13 PageID.3502). The financial statements and business documents referenced by Plaintiffs in their post-trial brief do not contradict the conclusion that CSS is a religious entity.

the Vendor Guidelines functioned as an individualized assessment and not a generally applicable policy. The nondiscrimination ordinance contains several objective, nondiscretionary exemptions that would allow the same discrimination that provide the justification for excluding Plaintiffs. And, the ordinance contains several discretionary exemptions that renders the ordinance not generally applicable. Under these circumstances, the City must meet strict scrutiny review. In light of the nondiscretionary and the discretionary exemptions in the ordinance, the City has not demonstrated a compelling interest in excluding Plaintiffs from the Farmer's Market. The City's nondiscrimination ordinance tolerates the same discrimination in other situations.

## ORDER

For the reasons provided in the accompanying Opinion, the Court **GRANTS** Plaintiffs' Rule 52(c) motion for judgment on partial findings. The Court concludes Plaintiffs are entitled to judgment on their claim for violation of the Free Exercise Clause based on individualized assessments.

**IT IS SO ORDERED.**

Date: __August 21, 2023__                                                                   __/s/  Paul L. Maloney__
                                                                                             Paul L. Maloney
                                                                                             United States District Judge